# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1937

_____

| | | |
|---|---|---|
| Neighborhood Enterprises, Inc.; | * | |
| Sanctuary in the Ordinary; Jim Roos, | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| City of St. Louis; St. Louis | * | |
| Board of Adjustment, | * | |
| | * | |
| Defendants - Appellees, | * | |
| | * | |
| Shari Cunningham; George Hitt; | * | |
| Joe Klitzing; Irene Soll; John Caruso; | * | |
| Mary Hart Burton; St. Louis City | * | |
| Department of Public Safety, Division | * | |
| of Building and Inspection, | * | |
| | * | |
| Defendants. | * | |
| _____ | * | |
| | * | |
| International Municipal Lawyers | * | |
| Association; Scenic America, Inc.; | * | |
| Scenic Missouri, Inc., | * | |
| | * | |
| Amici on Behalf of | * | |
| Appellees. | * | |

_____

Submitted: February 16, 2011
Filed: July 13, 2011

_____

Before SMITH, GRUENDER, and BENTON, Circuit Judges.
_____

SMITH, Circuit Judge.

Neighborhood Enterprises, Inc. ("Neighborhood"), Sanctuary In The Ordinary (SITO), and Jim Roos (collectively, "Sanctuary") filed suit against, *inter alia*, the City of St. Louis ("City") and St. Louis Board of Adjustment ("Board") challenging the Board's denial of a sign permit. Sanctuary further challenged the constitutionality of provisions of Chapter 26.68 of the Revised Code of the City of St. Louis ("zoning code") upon which the permit denial was based. Sanctuary asserted federal and state constitutional claims pursuant to 42 U.S.C. § 1983 and the Missouri Declaratory Judgments Act, Missouri Revised Statute § 527.010. It also sought a writ of certiorari pursuant to Missouri Revised Statute § 89.110, which provides for judicial review of "illegal" Board decisions. The district court granted summary judgment to the City and the Board, finding, *inter alia*, that the zoning code's restrictions on signs withstood constitutional scrutiny with respect to the Board's denial of Sanctuary's sign permit. Because we conclude that the challenged provisions of Chapter 26.68 of the zoning code are impermissibly content based and fail strict scrutiny, we now reverse and remand for further proceedings consistent with this opinion.

I. *Background*
A. *Factual Background*[1]

Neighborhood, a property-management company, manages the properties of SITO, a non-profit organization. Neighborhood describes itself as a "self-supporting housing ministry that manages rental housing mostly on the near south side of St. Louis." Roos is the founder of SITO and Neighborhood, and he is also the coordinator

_____

[1]Before the district court, the parties stipulated to the following facts in their "Joint Statement of Uncontroverted Material Facts."

-2-

and spokesperson for the Missouri Eminent Domain Abuse Coalition (MEDAC), a civic organization concerned about eminent-domain practices.

Roos describes himself as a critic of the City's use of eminent domain for private development. Roos and MEDAC, with tenant approval, commissioned a sign/mural[2] for the south side of 1806-08 South 13th Street, a SITO-owned building in the Near Southside Redevelopment Area. Roos described the sign/mural as a "poignant way . . . to make a statement." The sign/mural consists of the words "End Eminent Domain Abuse" inside a red circle and slash. The design of the sign/mural is similar to the design that MEDAC uses in its literature, buttons, and other materials. The sign/mural is approximately 363 or 369 square feet in area. It is visible from, among other areas, Interstates 44 and 55 and the Soulard neighborhood.

On April 10, 2007, the City's Division of Building and Inspection ("B&I") issued a citation to SITO, care of Neighborhood, declaring the sign/mural an "illegal sign." The citation explained that "[p]ermits must be acquired for signs of this type" and instructed SITO how it could obtain a permit. Consistent with the instructions in B&I's April 10, 2007 citation, SITO and Neighborhood filed a sign-permit application with B&I on May 14, 2007.

On May 30, 2007, the City's zoning administrator sent SITO a letter denying its sign permit application because it did not meet certain requirements of the zoning code. The "Basis for Denial" accompanying the letter stated that the building on which the sign/mural was painted was zoned "D," or "Multiple Family Dwelling District," and identified as the "applicable Zoning Code provisions" §§ 26.68.010; 26.68.020(17), (20), (21), (22) and (24); and 26.68.080(A), (B), (D) and (E)(2). A

---

[2]The City's position is that the object at issue is a "sign," while Sanctuary refers to the object as a "mural."

-3-

subsequent explanation of the zoning administrator's basis for denial, admitted as evidence at the Board hearing, stated:

> Appellant has painted a wall sign on the building at this address. The wall face of the building on which the sign has been painted does not have street frontage as defined in the Zoning Code, and is therefore not entitled to signage. In the 'D' zoning district any signage can only be erected, altered and maintained for and by a conforming use and must be clearly incidental to the operation of the conforming use; this property is assessed as a two-family dwelling. The maximum allowable square footage for any sign within this district is 30 sq. ft.; based on the diameter of the circular sign it is approximately 363 sq. ft. in area. Variances will be required in order to permit this sign.

The May 30, 2007 letter denying SITO's sign-permit application stated that SITO could appeal the denial to the Board, which SITO did on June 5, 2007.

On July 11, 2007, the Board heard SITO's appeal of the permit denial. At the hearing, SITO's attorney argued, *inter alia*, that SITO's sign/mural does not require a permit because, as a "work of art" or a "civic symbol[ ] or crest[ ]," it is exempted from the zoning code's definition of "sign." In the alternative, counsel argued that the zoning code's sign regulations violate the free-speech protections of the United States and Missouri Constitutions.

The Board upheld the denial of the sign permit on July 25, 2007. The Board's "Findings of Fact" stated that the "[p]roposed sign is in conflict with Sections 26.68.010, 26.68.020 and 26.68.080 of the Zoning Code of the City of St. Louis." The Board's "Conclusion of Law and Order" stated:

> The sign is located in Zone D, the multiple family dwelling district, and the sign is located on a residential building. The sign is substantially larger than the footage allowed by the Zoning Code and it is located on

the side of the building in contravention to the requirements of the Zoning Code. Board Member Hitt made a motion to uphold the decision to deny the sign permit as the size and location of the sign were in violation of the Zoning Code.

The above motion, made by George Hitt and seconded by Joe Klitzing was passed by a 4-0 vote of the Board, with Board member Caruso voting against.

The City justified its outdoor sign restrictions principally on concerns for traffic safety and aesthetics. Neither the City nor the Board is aware of any reports, studies, or memoranda (1) concerning or supporting the regulation of outdoor signs in Chapter 26.68 of the zoning code, (2) regarding whether the City's restrictions on outdoor signs affect traffic safety, (3) regarding whether the City's restrictions on outdoor signs affect the aesthetics of the City or surrounding neighborhood, (4) regarding whether the City's restrictions on outdoor signs affect property values in the City, or (5) discussing the impact of SITO's sign/mural on the flow of traffic on any street or highway. The City and the Board are unaware of any traffic incidents in which any driver involved mentioned SITO's sign/mural, or any "painted wall sign," as contributing to such incident. Further, the City and the Board have no (1) internal memoranda or communications, and no communications to or from them, discussing the adoption or enforcement of the regulations of outdoor signs in Chapter 26.68 of the zoning code or (2) minutes or transcripts of any City Board of Aldermen meeting, including any committee or subcommittee of such Board, concerning or relating to the regulation of outdoor signs in Chapter 26.68 of the zoning code.

Section 26.68.020(17) of the zoning code provides that "[i]f for any reason it cannot be readily determined whether or not an object is a sign, the Community Development Commission shall make such determination." St. Louis City Ordinance 64687 provides that "all functions and duties performed, or powers exercised prior to the effective date of this ordinance by personnel of the Community Development

Commission pursuant to any City ordinance shall be performed by personnel of the Planning Commission as assigned by the Planning Commission." The City has no written policy, other than Chapter 26.68 of the zoning code, for use in determining if (1) a sign contains the "symbol[ ] or crest [ ]" of a civic organization, as those terms are used in § 26.68.020(17)(d), or (2) if something is "art," as that term is used in § 26.68.020(17)(e).

The City's policies for implementing the sign regulations are contained in Chapter 26.68 of the zoning code.

## B. *Procedural Background*

Following the Board's decision, Sanctuary filed suit in state court, challenging the Board's denial of the sign permit and the zoning code provisions upon which the denial was based. Sanctuary asserted federal and state constitutional claims pursuant to 42 U.S.C. § 1983 and the Missouri Declaratory Judgments Act, Missouri Revised Statute § 527.010. Specifically, Sanctuary's complaint stated that it is brought pursuant to the First and Fourteenth Amendments of the United States Constitution; Article I, § 8 of the Missouri Constitution; The Civil Rights Act of 1871, 42 U.S.C. § 1983; and Missouri Revised Statute § 527.010. Sanctuary further stated that it seeks relief against the enforcement of the zoning code's sign regulations and the practices and policies of the City that allegedly—facially and as applied—deny Sanctuary the opportunity to engage in constitutionally protected communications.

Sanctuary's complaint alleged that (1) the zoning code's sign regulations are facially invalid under the United States Constitution and the Missouri Constitution, respectively; (2) the zoning code's sign regulations are unconstitutional as applied under the United States Constitution and the Missouri Constitution; (3) the City and Board exercised prior restraints in violation of Sanctuary's free speech rights under the United States Constitution and the Missouri Constitution, respectively; and (4) the

City and the Board deprived Sanctuary of equal protection pursuant to the Fourteenth Amendment of the United States Constitution.

In its complaint, Sanctuary sought (1) reversal of the Board's denial of the permit; (2) a declaration that the zoning code's sign regulations violate the First and Fourteenth Amendments of the United States Constitution and Article I, § 8, of the Missouri Constitution on their face and as applied to Sanctuary; (3) a judgment declaring that the Board's act denying the sign permit application illegally violated the First and Fourteenth Amendments and Article I, § 8, of the Missouri Constitution; (4) a judgment declaring that the zoning code's sign regulations violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; (5) a judgment permanently enjoining the City and the Board from enforcing the zoning code's sign regulations generally and as against Sanctuary in association with the mural at 1806-08 South 13th Street, St. Louis, Missouri; (6) nominal damages in the amount of $1.00; and (7) attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

Sanctuary also sought a writ of certiorari pursuant to Missouri Revised Statute § 89.110, which provides for judicial review of "illegal" Board decisions. Sanctuary's petition for writ of certiorari requested that the district court conduct a de novo administrative review of the Board's decision. The petition alleged that the Board's decision was illegal because (1) it utilized a facially unconstitutional zoning code to limit Sanctuary's freedom of speech, (2) the zoning code is unconstitutional as applied, (3) it was an illegal exercise of prior restraints, and (4) it deprived Sanctuary of equal protection under the law.

The district court granted summary judgment in favor of the City and the Board, concluding that (1) the Board's decision denying Sanctuary's sign permit "was not arbitrary, capricious, unreasonable, unlawful, or in excess of the Board['s] . . . jurisdiction," and (2) "[t]he restrictions placed on signs in the Sign Code withstand scrutiny under [Sanctuary's] constitutional challenges with respect to the denial of [its]

-7-

sign permit." *Neighborhood Enters., Inc. v. City of St. Louis, Mo.*, 718 F. Supp. 2d 1025, 1040 (E.D. Mo. 2010).

## II. *Discussion*

On appeal, Sanctuary argues that the zoning code's sign regulations (1) impermissibly burden free speech, in violation of the First Amendment of the United States Constitution and Article I, § 8, of the Missouri Constitution[3]; (2) effect a prior restraint on its speech; and (3) violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Sanctuary also contends that the district court erroneously declined to issue a writ of certiorari and enter judgment for Sanctuary on its claims under Missouri Revised Statute § 89.110.

We review de novo a district court's grant of summary judgment. *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 798 (8th Cir. 2006). A district court should not grant summary judgment "unless there is no issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* "An issue of fact cannot result from mere denials or conclusory allegations in the pleadings but must be based on specific factual allegations." *Id.*

### A. *Standing*

As a threshold matter, the City and Board argue that the district court correctly determined that Sanctuary may only challenge those provisions of the zoning code that the Board actually applied to Sanctuary in denying the sign permit. *See Neighborhood Enters., Inc.*, 718 F. Supp. 2d at 1036 n.7 ("Petitioners may only

---

[3]Missouri courts have not decided "'whether the circumference of Mo. Const. art. I, § 8 is identical to that of the First Amendment in all instances.'" *BBC Fireworks, Inc. v. State Highway & Transp. Comm'n*, 828 S.W.2d 879, 881 (Mo. 1992) (en banc) (quoting *State v. Roberts*, 779 S.W.2d 576, 579 (Mo. 1989) (en banc)). For purposes of this appeal, we will treat the federal and state claims in the present case as coextensive.

challenge those provisions of the Code which were actually applied to them.").[4] According to the City and the Board, Sanctuary cannot show a causal connection between its purported injury and the provisions of the zoning code not applied to it. *See Advantage*, 456 F.3d at 801 ("Since most of the content based restrictions and procedural mechanisms which Advantages claims violate the First Amendment rights of other parties were not factors in the denial of its own permit applications, it cannot show causation with respect to them.").

An "inescapable threshold question" is whether Sanctuary "has established the traditional elements of Article III standing." *Id*. at 799. Federal jurisdiction is limited "to cases and controversies, and the 'core component of standing is an essential and unchanging part of the case-or-controversy requirement.'" *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

"[C]onstitutional standing consists of three elements: 1) an injury in fact which is 'actual, concrete, and particularized'; 2) a causal connection between that injury and defendant's conduct; and 3) a likelihood that the injury can be redressed by a favorable decision." *Id*. at 798–99 (quoting *Lujan*, 504 U.S. at 560–61). "To establish causation a plaintiff must show that its injury is 'fairly traceable' to a challenged statutory provision." *Id*. at 801 (quoting *Republican Party of Minn. v. Klobuchar*, 381 F.3d 785, 792 (8th Cir. 2004)).

Here, Sanctuary requested a sign permit because the City instructed it to do so. Thereafter, the City's zoning administrator denied Sanctuary's application based upon

---

[4]As a result, the district court concluded that "[n]either the definition of 'sign' in the Code, (on *26.68.020(17)*), nor the restrictions placed on signs, (Section *26.68.010*) infringe or impinge, facially or as applied to Petitioners, their Constitutionally protected political speech." *Id*. at 1036 (emphasis added) (footnote omitted).

§§ 26.68.010; 26.68.020 (17), (20), (21), (22), and (24); and 26.68.080(A), (B), (D), and (E)(2)of the zoning code.[5] Additionally, the zoning administrator stated that the building on which the sign/mural was painted was zoned "D"—"Multiple Family Dwelling District." The zoning administrator testified that "he reviewed the application for the sign and determined that the object in question *fit the City's meaning of a sign*, as defined by the Zoning Code." (Emphasis added.) He was "able to determine, based on the Zoning Code, that the object was a sign, which then did not trigger the provision contained in Section 26.68.020 17 [sic], requiring the City's Planning Commission to make such determination." The Board then upheld the denial of the sign permit because the "[p]roposed *sign is in conflict with* Sections 26.68.010, 26.68.020 and 26.68.080 of the Zoning Code of the City of St. Louis." (Emphasis added.) Because these provisions were "factors in the denial of its own permit application[ ]," Sanctuary *can* "show causation with respect to them." *Advantage*, 456 F.3d at 801.

Moreover, Sanctuary "has standing to challenge those portions of the Sign Code which 'provide the basic definitional structure for the terms used in [the violated sections] and which more generally define the scope of signs allowed by [the violated sections].'" *Bonita Media Enters., LLC v. Collier Cnty. Code Enforcement Bd.*, No. 2:07-cv-411-FtM-29DNF, 2008 WL 423449, at *5 (M.D. Fla. Feb. 13, 2008) (alteration in original) (quoting *KH Outdoor, LLC v. Trussville*, 458 F.3d 1261, 1267 (11th Cir. 2006)). Sanctuary's challenge may "include[ ] provisions discussing the purpose and intent of the Sign Code and definitional sections." *Id.* (citing *KH Outdoor*, 458 F.3d at 1267). We may "tak[e] into account other provisions," such as § 26.68.030 and § 26.68.050,[6] "that may affect the constitutionality of those

---

[5]The relevant statutory sections are set forth in the Appendix at the end of this opinion.

[6]The relevant statutory sections are set forth in the Appendix at the end of this opinion.

provisions" applied to Sanctuary. *Café Erotica of Fla., Inc. v. St. Johns Cnty.*, 360 F.3d 1274, 1278–79 (11th Cir. 2004). The City's designation of Sanctuary's purported mural as a "sign" essentially acknowledges that the alleged sign fits no content exemption under §§ 26.68.020(17)(a)–(e), 26.68.030, or 26.68.050. *Bowden v. Town of Cary*, 754 F. Supp. 2d 794, 801 (E.D.N.C. 2010).

## B. *Free Speech*

Sanctuary asserts that the zoning code's sign regulations impermissibly burden free speech. According to Sanctuary, the regulations "are riddled with content-based exemptions and restrictions"; therefore, the district court erroneously concluded that the zoning code's sign regulations are content neutral. Sanctuary avers that the content-based sign regulations fail strict scrutiny because, under this court's precedent, the City's interests in traffic safety and aesthetics are not "compelling" interests.

In response, the City and the Board assert that the definition of "sign" in the zoning code is content- and viewpoint-neutral. According to the City and the Board, Sanctuary's argument that the exceptions to the definition of "sign" make the sign regulations content-based fails under a constitutional analysis. The City and the Board assert that because the sign regulations are content neutral, intermediate scrutiny applies. They contend that the sign regulations satisfy intermediate scrutiny because they serve the significant and established governmental interests of traffic safety and aesthetics and leave open ample alternative channels for communication of Sanctuary's message.

The Free Speech Clause of the First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I. This clause "is applicable to the political subdivisions of the states." *Whitton v. City of Gladstone, Mo.*, 54 F.3d 1400, 1402 (8th Cir. 1995). The Free Speech Clause protects signs, as they are "a form of expression.'" *Id*. (quoting *City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994)). But "signs 'pose distinctive problems that are subject to

municipalities' police powers. Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation.'" *Id*. at 1402–03 (quoting *City of Ladue*, 512 U.S. at 48).

To evaluate the constitutionality of the zoning code's sign regulations—which constitute a restriction upon speech—"we apply the familiar framework." *Id*. at 1403. "We first 'determine whether [the] regulation is content-based or content-neutral, and then, based on the answer to that question, . . . apply the proper level of scrutiny.'" *Id*. (alteration in original) (quoting *City of Ladue*, 512 U.S. at 59 (O'Connor, J., concurring)). We note that "the argument that a restriction on speech is content-neutral because it is viewpoint-neutral has been repeatedly rejected by the Supreme Court." *Id*. at 1405.

The City and the Board "contend[ ] that each challenged provision is a constitutionally permissible time, place, and manner restriction." *Id*. at 1403. "A purported time, place, and manner restriction is constitutionally permissible so long as it is 'justified without reference to the content of the regulated speech . . . .'" *Id*. (alteration in original) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). "Therefore, our threshold inquiry for each challenged provision of the sign code necessarily focuses upon whether the provision at issue is a content-based restriction and then, based upon the resolution of that question, we will apply the appropriate level of scrutiny." *Id*.

Upon review, we conclude that the zoning code's definition of "sign" is impermissibly content-based because "the message conveyed determines whether the speech is subject to the restriction." *Id*. at 1403–04 (citing *City of Cincinnati v. Discovery Network, Inc*., 507 U.S. 410, 429 (1993)). Put another way, to determine whether a particular object qualifies as a "sign" under § 26.68.020(17) and is therefore subject to the regulations, or is instead a "non-sign" under § 26.68.020(17)(a)–(e) or

exempt from the sign regulations under §§ 26.68.030 or 26.68.050, one must look at the *content* of the object. Thus, an object of the same dimensions as Sanctuary's "End Eminent Domain Abuse" sign/mural would not be subject to regulation if it were a "[n]ational, state, religious, fraternal, professional and civic symbol[ ] or crest[ ], or on site ground based measure display device used to show time and subject matter of religious services." St. Louis City Revised Code § 26.68.020(17)(d). "Simply stated [§§ 26.68.020(17), 26.68.030, and 26.68.050] [are] content-based because [they] make[ ] impermissible distinctions based *solely* on the content or message conveyed by the sign." *Whitton*, 54 F.3d at 1404. "The words on a sign define whether it is subject to [the sign regulations]." *Id*.; *see also Soltanic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1266 (11th Cir. 2005) ("In short, because some types of signs are extensively regulated while others are exempt from regulation based on the nature of the messages they seek to convey, the sign code is undeniably a content-based restriction on speech.").

In reaching this conclusion, we are not "required to accept legislative explanations from a governmental entity regarding the purpose(s) for a restriction on speech without further inquiry." *Whitton*, 54 F.3d at 1406. "[E]ven when a government supplies a content-neutral justification for the regulation, that justification is not given controlling weight without further inquiry." *Id*. (citing *City of Cincinnati*, 507 U.S. at 429–30). As a result, "even if we agree with the City . . . that its restriction is 'justified' by its interest in maintaining traffic safety and preserving aesthetic beauty, we still must ask whether the regulation *accomplishes* the stated purpose in a content-neutral manner." *Id*. "Although [the City's] justification for enacting [the sign regulations] was to curtail the traffic dangers . . . and to promote aesthetic beauty, [the City] has not seen fit to apply such restrictions to" all signs of the same dimensions. *Id*. at 1407. The City has "differentiat[ed] between speakers for reasons unrelated to the legitimate interests that prompted the regulation." *Id*. (quotation and citation omitted).

Because the challenged sign provisions of the zoning code are content-based restrictions, strict-scrutiny applies. *Id*. at 1408.[7]

> "With rare exceptions, content discrimination in regulations of the speech of private citizens on private property . . . is presumptively impermissible, and this presumption is a very strong one." *City of Ladue*, [512] U.S. at [59], 114 S. Ct. at 2047 (O'Connor, J., concurring). "[C]ontent-based restrictions on political speech 'must be subjected to the most exacting scrutiny.'" *Ward* [*v. Rock Against Racism*], 491 U.S. [781,] 798 n. 6, 109 S. Ct. [2746,] 2758 n. 6 [(1989)] (quoting *Boos* [*v. Barry*], 485 U.S. [312,] 321, 108 S. Ct. [1157,] 1164 [(1988)]). "For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Ed. Ass'n* [*v. Perry Local Educators' Ass'n*], 460 U.S. [37,] 45, 103 S. Ct. [948,] 955 [(1983)]. The requirement that a restriction on speech be narrowly drawn requires the regulation to be the "least restrictive" alternative available. *Ward*, 491 U.S. at 798 n. 6, 109 S. Ct. at 2758 n. 6 (quoting *Boos*, 485 U.S. at 329, 108 S. Ct. at 1168).

*Id*.

Here, the City's asserted interests are traffic safety and aesthetics. But "a municipality's asserted interests in traffic safety and aesthetics, while significant, have never been held to be compelling." *Id*.; *see also Soltanic*, 410 F.3d 1250 at 1267 (concluding that a city's "asserted interests in aesthetics and traffic safety" are not "compelling"); *cf. Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507–08 (1981) ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are *substantial* governmental goals." (emphasis added)).

---

[7]The City conceded at oral argument that the challenged provisions of the sign code would not pass constitutional muster under strict scrutiny. Nevertheless, we will independently analyze whether the challenged provisions satisfy strict scrutiny.

Furthermore, "[e]ven if we were to assume that [the City's] proffered interests in aesthetics or traffic safety were adequate justification for content-based sign regulations, the sign code cannot withstand strict scrutiny because it is not narrowly drawn to accomplish those ends." *Soltanic*, 410 F.3d at 1267. The zoning code's sign regulations "recite[ ] those interests only at the highest order of abstraction, without ever explaining how they are served by the sign code's regulations generally, much less by its content-based exemptions from those regulations." *Id*. The zoning code "offer[s] no reason for applying its [sign regulations] to some types of signs but not others." *Id*. In summary:

> Although the sign code's regulations may generally promote aesthetics and traffic safety, the City has simply failed to demonstrate how these interests are served by the distinction it has drawn in the treatment of exempt and nonexempt categories of signs. Simply put, the sign code's exemptions are not narrowly tailored to accomplish either the City's traffic safety or aesthetic goals.

*Id*. at 1268.

Therefore, the City's "sign code fails both aspects of [strict scrutiny]: the sign code is not narrowly tailored to accomplish the City's asserted interests in aesthetics and traffic safety, nor has our case law recognized those interests as 'compelling.'" *Id*. at 1267.[8]

---

[8]Because we hold that the challenged provisions of the zoning code violate the First Amendment, we need not reach Sanctuary's prior restraint and equal protection claims, nor its argument that the district court erroneously declined to issue a writ of certiorari under Missouri Revised Statute § 89.110. *See, e.g.*, *Green Party of Conn. v. Garfield*, 616 F.3d 189, 213 (2d Cir. 2010) ("*Green Party II*") ("We need not address plaintiffs' equal protection and due process claims, for they challenge provisions of the CFRA that we have struck down under the First Amendment—namely, the CFRA's ban on lobbyist contributions and the solicitation of contributions by lobbyists.").

## C. *Remedy*

Because we have determined that the zoning code's definition of "sign" violates the Free Speech Clause of the First Amendment because of the presence of content-based exemptions and exceptions, we must determine whether we may sever these provisions from Chapter 26.68 of the zoning code or whether we must strike down the entirety of Chapter 26.68 along with those provisions. *Green Party of Conn. v. Garfield*, 616 F.3d 213, 246 (2d Cir. 2010) (*"Green Party I"*). "The District Court did not consider the severability issue because it held that each of the challenged provisions was constitutional." *Green Party II*, 616 F.3d at 210. "We therefore remand to the District Court to consider the severability issue in the first instance." *Green Party I*, 616 F.3d at 248; *see also Green Party II*, 616 F.3d at 211–12 ("We . . . remand to the District Court to determine whether the unconstitutional provisions of the CFRA addressed in this opinion are severable from the remainder of the law."); *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1016 (9th Cir. 2009) ("We remand to allow the district court to determine whether the unconstitutional provisions are severable from the remainder of § 5.60."); *Ackerley Commc'ns of Mass., Inc. v. City of Cambridge*, 135 F.3d 210, 214 (1st Cir. 1998) (explaining that "severability disputes usually turn on fact-intensive inquiries best left to the trial court in the first instance").

## III. *Conclusion*

Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

_____

## Appendix

Section 26.68.010 of the zoning code provides:

These regulations shall govern and control the erection, remodeling, enlarging, moving, operation and maintenance of all signs by conforming uses within all zoning districts. Nothing herein contained shall be deemed a waiver of the provisions of any other ordinance or regulation applicable to signs. Signs located in areas governed by several ordinances and/or applicable regulations shall comply with all such ordinances and regulations.

Section 26.68.020 of the zoning code defines the relevant terms from the "Comprehensive Sign Control Regulations." It provides, in pertinent part:

For the purpose of this chapter the following terms, phrasing, words and their deviations shall have the meaning given herein:

\* \* \*

17. Sign. "Sign" means any object or device or part thereof situated outdoors which is used to advertise, identify, display, direct or attract attention to an object, person, institution, organization, business product, service, event, or location by any means including words, letters, figures, designs, symbols, fixtures, colors, motion illumination or projected images. *Signs do not include the following*:

a. Flags of nations, states and cities, fraternal, religious and civic organization;

b. Merchandise, pictures of models of products or services incorporated in a window display;

c. Time and temperature devices;

-17-

d. National, state, religious, fraternal, professional and civic symbols or crests, or on site ground based measure display device used to show time and subject matter of religious services;

e. Works of art which in no way identify a product.

If for any reason it cannot be readily determined whether or not an object is a sign, the Community Development Commission shall make such determination.

* * *

20. Sign Frontage. "Sign frontage" means the length along a ground floor building front, facing a street or a private way accessible from a street, which is occupied by a separate and distinct use or by the same use which occupies the front of said building.

21. Street Front. "Street front" means any boundary line of a premises or parcel of land that runs parallel to and within twenty (20) feet of the right-of-way of a street or highway designated and assigned an individual name or number by the legislative action of the municipality.

22. Street Property Line. "Street property line" means a common boundary between private property and a dedicated street or alley.

* * *

24. Wall Sign. "Wall sign" means a sign attached to, painted on, or erected against a wall or parapet wall of a building or structure which extends no more than twenty-four (24) inches from the wall surface upon which it is attached and whose display surface is parallel to the face of the building to which the sign is attached.

(Emphasis added.)

Section 26.68.080 of the zoning code concerns "Signs in zone districts C, D, and E" and provides, in relevant part:

-18-

A. General. On premises signs may be erected, altered and maintained only for and by a conforming use in the district in which the signs are located; shall be located on the same premises as the conforming use and shall be clearly incidental, customary as commonly associated with the operation of the conforming use provided, however, that no sign of any type shall be erected or maintained for or by a single unit dwelling.

B. Permitted Contents. Identification by letter, numeral, symbol or design of the conforming use by name, use, hours of operation, services offered and events.

C. Permitted Sign Types. Wall, window and ground.

D. Permitted Maximum Number. One (1) sign for each front line of the premises on which the conforming use is located.

E. Permitted Maximum Sign Area.

* * *

2. All other uses. Total signage shall not exceed thirty (30) square feet.

Section 26.68.030 of the zoning code is entitled "Signs permitted in all district" and sets forth 14 categories of signs exempted from the sign permit requirement. It provides:

The following described signs *are not covered by the rules and regulations* set forth below in Section 26.68.060 and a building permit for any of the following described signs, if necessary, may be issued by the Building Commissioner without the said Commissioner determining if said sign complies with such rules or regulations.

A. Signs required or specifically authorized for a public purpose by any law, statute, or ordinance; may be of any type, number, area, height, above grade, location, illumination or animation, authorized by law, statute or ordinance under which the signs are required or authorized.

B. Signs of danger or a cautionary nature which are limited to: wall and ground signs; not more than two (2) per street front for each conforming use, or two (2) for each dwelling unit; not more than four (4) square feet per sign in area; not more than ten (10) feet in height above grade; may be illuminated only from a concealed light source which does not flash, blink or fluctuate; and shall not be animated.

C. Signs in the nature of cornerstones, commemorative tables and historical signs which are limited to: wall and ground signs; not more than two (2) per premises; not more than six (6) feet in height above grade; may be illuminated only from a concealed light source which does not flash, blink, fluctuate; shall not be animated.

D. Signs which identify by name or number individual buildings within institutional or residential building group complexes and which are limited to: wall and ground signs; not more than four (4) signs per building; not more than ten (10) square feet per sign in area; not more than twelve (12) feet in height above grade; any location on the premises; may be illuminated only from a concealed light source which does not flash, blink or fluctuate and shall not be animated.

E. Signs in the nature of decorations, clearly incidental and customary and commonly associated with any national, local or religious holiday; provided that such signs shall be displayed for a period of not more than sixty (60) consecutive days nor more than sixty (60) days in any one year; and may be of any type, number, area, height, location, illumination or animation.

F. Signs in the display window of a business use which are incorporated into a display of merchandise or a display relating to services offered on the same premises and limited to: window signs; one (1) sign per five (5) feet of window frontage; not more than eight (8) square feet per sign in area; ground level windows only; may be illuminated only from a concealed light source which does not flash, blink or fluctuate; shall not be animated.

G. Signs commonly associated with and limited to information and directions relating to the conforming use on the premises on which the sign is located, provided that each such sign is limited to: wall, window and ground signs; not more than four (4) square feet per sign in area; not more than eight (8) feet in height above grade; may be illuminated only from a concealed light source which does not flash, blink or fluctuate; shall not be animated except that gauges and dials may be animated to the extent necessary to display correct measurement.

H. No more than two (2) ground, wall or window political signs may be erected and maintained on each premises provided that such signs shall not be more than ten (10) feet square, shall not be more than six (6) feet in height; shall not flash, blink, fluctuate or be animated but may be illuminated; shall not be posted more than ninety (90) days prior to the election to which the sign is related and shall be removed within fifteen (15) days following the election to which the signs relate.

I. Signs which are not visible from any public right-of-way, from any publicly owned land or from any level whatsoever of any other premises; may be illuminated; may be animated.

J. Signs displaying only the name and address of a subdivision or of a planned building group of at least eight (8) buildings each containing a conforming use or uses and limited to: wall and ground signs; one (1) per street front; not more than twenty (20) square feet per face in area; not more than six (6) feet in height above grade; may be illuminated only from a concealed light source which does not flash, blink or fluctuate; shall not be animated.

K. Signs consisting of illuminated buildings or parts of buildings which do not display letters, numbers, symbols or designs and limited to illumination from a concealed light source which may not flash or blink, but may fluctuate by a change of color or intensity of light, provided that each change of color or dark to light to dark cycle shall have a duration of one and one-half (11/2) minutes or longer; shall not be animated.

L. Signs giving parking or traffic directions, provided that such signs are limited to: wall and ground signs; one (1) sign per curb cut on the premises; not more than six (6) square feet per face in area; not more than six (6) feet in height above grade; may be illuminated from a concealed light source which does not flash, blink or fluctuate; shall not be animated.

M. Temporary signs that only advertise or identify construction, remodeling, rebuilding, development, sale, lease or rental of either a conforming use or a designated land area shall not be required to comply with the rules and regulations, relating to signs in their zoning district, unless said sign is viewable from any public right-of-way for a period in excess of six (6) months. If said sign is so viewable in excess of six (6) months, it must be approved by the Building Commissioner as a permanent sign under the rules and regulations set out in Section 26.68.060.

N. Signs on trash or refuse containers.

(Emphasis added.)

Section 26.68.050 of the zoning code is entitled "Political signs in F through K districts" and provides:

*In addition to the signs exempted by Section 26.68.030 permits are not required* for the following political signs in the F through K zoning districts:

A. Permitted Sign Types of Political Signs. Wall, ground, window and marquee.

B. Permitted Maximum Number of Political Signs. Three (3) signs for each premises or designated land area on which the signs are located.

C. Permitted Area of Political Signs. No limitation.

D. Permitted Maximum Height Above Grade of Political Signs. Twenty-five (25) feet.

E. Permitted Location of Political Signs. No limitation.

F. Permitted Illumination of Political Signs. May be illuminated by a concealed light source but shall not flash, blink or fluctuate.

G. Animation of Political Signs. Signs shall not be animated. (Ord. 59979 § 18 (part), 1986.)

(Emphasis added.)

_____