# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-1753
_____

Lawrence Willson

*Plaintiff - Appellant*

v.

City of Bel-Nor, Missouri

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 15, 2019
Filed: May 20, 2019
_____

Before BENTON, MELLOY, and KELLY, Circuit Judges.
_____

BENTON, Circuit Judge.

Lawrence Willson moved to preliminarily enjoin enforcement of a Bel-Nor ordinance restricting the number of signs displayed on private property. The district court denied the motion. Having jurisdiction under § 1292(a)(1), this court reverses and remands.

Willson has three stake-mounted, freestanding signs in the front yard of his residence in Bel-Nor, Missouri. He has displayed "Clinton Kaine" and "Jason Kander U.S. Senate" signs since 2016, and a "Black Lives Matter" sign since 2014. In December 2017, he received an information and summons charging him with violating Bel-Nor Ordinance 983.

Months earlier, the Bel-Nor Board of Alderman passed Ordinance 983, codified as Bel-Nor Municipal Code § 400.120(E). The Ordinance permits "each improved parcel" of private property "to post one stake-mounted and self-supporting freestanding sign" and "Not more than one (1) flag." It includes several requirements for the size, placement, and features of permissible signs and flags.

Willson sought preliminary injunctive relief, arguing Ordinance 983 is content-based, vague, and overbroad in violation of the First Amendment's Free Speech Clause. The district court denied the motion. "A district court considering injunctive relief evaluates the movant's likelihood of success on the merits, the threat of irreparable harm to the movant, the balance of the equities between the parties, and whether an injunction is in the public interest." *Gresham v. Swanson*, 866 F.3d 853, 854 (8th Cir. 2017). "When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc). The district court held that Willson was unlikely to succeed on the merits of his First Amendment challenge. It found Ordinance 983 content-neutral and narrowly-tailored to address Bel-Nor's significant interests in aesthetics and traffic safety. It rejected Willson's overbreadth challenge.

This court reviews the denial of a preliminary injunction for abuse of discretion. *See Grand River Enter. Six Nations, Ltd. v. Beebe*, 467 F.3d 698, 701 (8th Cir. 2006). This court reviews First Amendment claims de novo and "make[s]

-2-

a fresh examination of crucial facts." ***Johnson v. Minneapolis Park & Recreation Bd.***, 729 F.3d 1094, 1098, 1101–02 (8th Cir. 2013) (reversing denial of motion for preliminary injunction because plaintiff was likely to succeed on the merits of his First Amendment claim, and government regulation was not narrowly tailored).

## I.

The First Amendment, applicable to the states through the Fourteenth Amendment, prohibits laws "abridging the freedom of speech." **U.S. Const. amend. I.** "Under that Clause, a government, including a municipal government vested with state authority, has no power to restrict expression because of its message, its ideas, its subject matter, or its content." ***Reed v. Town of Gilbert***, 135 S. Ct. 2218, 2226 (2015). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." ***Id.***

Willson argues that Ordinance 983 is content-based because its flag exemption imposes different restrictions on signs depending on their content. The district court held that Willson lacks standing to challenge the flag exemption because there was no evidence that it affected Willson. This was error. Willson has standing to challenge the Ordinance's "definitional sections." ***Neighborhood Enter., Inc. v. City of St. Louis***, 644 F.3d 728, 735 (8th Cir. 2011). In *Neighborhood Enterprises*, this court reversed a district court holding that plaintiffs denied an application to commission a mural "may only challenge those provisions of [a city Sign Code] which were actually applied to them." ***Neighborhood Enter., Inc. v. City of St. Louis***, 718 F. Supp. 2d 1025, 1036 n.7 (E.D. Mo. 2010), *rev'd,* 644 F.3d at 735. "The City's designation of [the plaintiffs'] purported mural as a 'sign' essentially acknowledges that the alleged sign fits no content exemption under [those provisions of the code challenged by plaintiffs but not cited against them]." ***Neighborhood***

-3-

***Enter.***, 644 F.3d at 735.  Like the *Neighborhood Enterprises* plaintiffs, Willson "has standing to challenge those portions of the Sign Code which provide the basic definitional structure for the terms used in the violated sections and which more generally define the scope of signs allowed by the violated sections." ***Id.***  When Bel-Nor charged Willson with violating Ordinance 983, it acknowledged that his signs did not fit the flag exemption.  The court "may 'tak[e] into account other provisions'" of the Ordinance "that may affect the constitutionality of those provisions" applied to Willson.  ***Id.***, *quoting* ***Café Erotica of Fla., Inc. v. St. Johns Cnty.***, 360 F.3d 1274, 1278–79 (11th Cir. 2004) (alterations in original).  Willson has standing to argue that Ordinance 983 is content-based.

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." ***Reed***, 135 S. Ct. at 2227.  Ordinance 983 is content-based because it "defin[es] regulated speech by particular subject matter." ***Id.***  Under the Ordinance, each improved parcel may have up to one stake-mounted, freestanding sign. A sign is:

> Any poster, object, devise [sic], or display, situated outdoors, which is used to advertise, identify, display, direct or attract attention to an object, person, institution, organization, business, product, service, event, idea, belief or location by any means, including but not limited to words, letters, figures, designs, symbols, colors, logos, fixtures, cartoons or images.

In addition to one sign, the Ordinance allows each improved parcel"[n]ot more than one (1) flag."  A flag includes:

> any fabric or bunting containing distinctive colors, patterns or symbols used as a symbol of a government or institution.

Under this section of the Ordinance, "flags shall not be considered 'signs.'"

These definitions show that the content of a flag or sign determines whether it is a flag or sign. For example, applying the ordinary meaning of "government or institution," a fabric with a Cardinals logo is a "sign," while a fabric with an Army logo is a "flag." This inquiry is content-based because whether a fabric is a sign or a flag—and whether it is prohibited by the Ordinance—depends on the "the topic discussed or the idea or message expressed." *Reed*., 135 S. Ct. at 2227.

Bel-Nor denies that Ordinance 983's flag exemption is content-based. It advances an "exceptionally broad" definition of "institution," encompassing "[a]ny significant practice, relationship or organization in a society or culture." According to Bel-Nor, the Cardinals are an institution, marriage is an institution, and even a "Black Lives Matter" sign may be a "flag" under the Ordinance. Bel-Nor concludes: "Hence, it is difficult to imagine any flag that would not be permitted."

Contrary to Bel-Nor's suggestion, it is not "difficult to imagine" a message omitted by the Ordinance's definition of a flag as "a symbol of a government or institution." *See United States v. Stevens*, 559 U.S. 460, 474–75 (2010) (applying "ordinary meaning" of words in statute instead of Government's strained reading). Even if Bel-Nor were to enforce the Ordinance without distinguishing between flags and signs based on content, this court will "not uphold an unconstitutional statute merely because the Government promise[s] to use it responsibly." *Id.* at 480, *citing Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 473 (2001). As written, Ordinance 983 "draws distinctions based on the message a speaker conveys." *Josephine Havlak Photographer, Inc. v. Village of Twin Oaks*, 864 F.3d 905, 914 (8th Cir. 2017), *quoting Reed*, 135 S.Ct. at 2227.

As a content-based restriction, Ordinance 983 must satisfy strict scrutiny. *See Reed*, 135 S.Ct. at 2227. Bel-Nor must show that the one-sign limit "furthers a compelling governmental interest and is narrowly tailored to that end." *Id.* at 2231. If the restriction is not narrowly tailored to achieve a compelling interest, it is an

"unconstitutional restraint[] on free speech." ***Whitton v. City of Gladstone***, 54 F.3d 1400, 1409 (8th Cir. 1995) (invalidating ordinance prohibiting political signs more than 30 days before election and requiring sign removal within 7 days of election, because content-based restriction not narrowly tailored to meet city's aesthetic and traffic safety concerns). Bel-Nor argues the Ordinance is justified by traffic safety and aesthetics. These interests here are not compelling. *See **Neighborhood Enter.**,* 644 F.3d at 737–38 (sign code fails strict scrutiny because "municipality's asserted interests in traffic safety and aesthetics, while significant, have never been held to be compelling"). Lacking a compelling interest, Ordinance 983 cannot satisfy strict scrutiny.

Yet "even if . . . [the city's] proffered interests in aesthetics or traffic safety were adequate justification for content-based sign regulations, the sign code cannot withstand strict scrutiny because it is not narrowly drawn to accomplish those ends." ***Id.*** at 738, *quoting **Solantic, LLC v. City of Neptune Beach***, 410 F.3d 1250, 1267 (11th Cir. 2005). "This narrow tailoring requirement means . . . that the factual situation demonstrates a real need for the government to act to protect its interests." ***Johnson***, 729 F.3d at 1099. *See also **McCullen v. Coakley***, 573 U.S. 464, 493 (2014) (city-wide ordinance not narrowly-tailored to address a problem that city's evidence indicates occurs in one location once a week). Here, Bel-Nor did not cite any evidence that Ordinance 983 furthers its stated interests. *See **Johnson***, 729 F.3d at 1100 (restriction not narrowly-tailored because government "presented little evidence" that the restriction furthered stated interests); ***Whitton***, 54 F.3d at 1408 (restriction not narrowly-tailored because government "has not presented sufficient evidence" that the Ordinance is the least restrictive means to further stated interests and "no evidence that enforcement of these existing provisions is insufficient").

Bel-Nor stresses the testimony of its Mayor Pro-Term William Hook that Bel-Nor is a small city with many schools, small housing lots, and narrow streets. He testified that Bel-Nor is concerned about distracted driving, and Ordinance 983

reflects the city's interest in public safety. "[I]t is not enough for the [Government] to recite an interest that is significant in the abstract; there must be a genuine nexus between the regulation and the interest it seeks to serve." *Johnson*, 729 F.3d at 1099, *citing **United States v. Grace***, 461 U.S. 171, 182–83 (1983). Bel-Nor has not proved the required nexus. Ordinance 983 is not narrowly-tailored to achieve a compelling government interest. It fails strict scrutiny. *See **Reed***, 135 S. Ct. at 2232 (invalidating law because Government "has not met its burden to prove that its Sign Code is narrowly tailored to further a compelling government interest").

## II.

Willson also argues that Ordinance 983 is facially overbroad. "In the First Amendment context, . . . a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Stevens*, 559 U.S. at 473. "Ordinarily, a party may not facially challenge a law on the ground that it would be unconstitutional if applied to someone else." *Josephine Havlak*, 864 F.3d at 911. However, First Amendment overbreadth doctrine "was designed as a departure from traditional rules of standing to enable persons who are themselves unharmed by the defect in a statute nevertheless to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." ***Board of Trustees of State Univ. of N.Y. v. Fox***, 492 U.S. 469, 484 (1989). This court may entertain Willson's facial challenge because there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court." *Josephine Havlak*, 864 F.3d at 912.

"'The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers.'" ***Snider v. City of Cape Girardeau***, 752 F.3d 1149, 1158 (8th Cir. 2014), *quoting **United States v. Williams***, 553 U.S. 285, 293 (2008). "After

-7-

construing the statute, the second step is to examine whether the statute criminalizes a 'substantial amount' of expressive activity." *Id.*, *citing Williams*, 553 U.S. at 292. Ordinance 983 restricts each improved parcel to no more than one stake-mounted, freestanding sign and one flag. The Ordinance's expansive definition of a sign, combined with its strict sign restrictions, applies to a substantial amount of expressive conduct. Willson offers examples of expressive conduct that are prohibited by the Ordinance:

- "tacking up a 'Welcome Home' banner on the garage" ("No sign shall be affixed to any . . . garage . . . ; [t]he following . . . types of signs are prohibited . . . any material that flutters");

- "sticking an ADT Security window cling to the front window" ("[n]o sign shall be displayed from the interior of any window");

- "displaying Christmas lights" (Ordinance 983 prohibits any "object . . . . used to attract attention to an . . . event . . . by any means, including . . . colors," and "[i]llumination in any manner is prohibited");

- tying a "Happy Birthday" balloon to a front door on the day of a birthday party ("The following materials . . . are prohibited . . . [t]he use of balloons").

These examples illustrate that Ordinance 983 creates a "prohibition of alarming breadth." *Stevens*, 559 U.S. at 474 (invalidating federal statute criminalizing the commercial creation, sale, or possession of depictions of animal cruelty as substantially overbroad and facially invalid). Bel-Nor's interests in traffic safety and aesthetic do not justify such a broad restriction of residents' constitutionally-protected conduct. Ordinance 983 is overbroad and facially invalid because "the impermissible applications of the law are substantial when judged in relation to the statute's plainly

legitimate sweep." **Snider**, 752 F.3d at 1157, *citing* **Broadrick v. Oklahoma**, 413 U.S. 601, 615 (1973).

Bel-Nor argues that "there is no risk of substantial limitation of First Amendment rights" because "[r]esidents of Bel-Nor are able to display one sign with two sign faces and are able to rotate these signs as often as they wish[]." According to Bel-Nor, two sign faces and a flag offer "a total of three (3) different manners of communicating thoughts and ideas." Even considering a two-sided sign and one flag, a one-sign limit is too restrictive under First Amendment doctrine. *See* **Arlington Cty. Republican Comm. v. Arlington Cty.**, 983 F.2d 587, 594 (4th Cir. 1993) (finding that a two-sign limit infringes on speech "by preventing homeowners from expressing support for more than two candidates when there are numerous contested elections . . . . [and] two voters living within the same household [may] support opposing candidates.").

Lastly, Ordinance 983's severe restrictions do not "leave open ample alternative channels for communication of the information." **Clark v. Cmty. for Creative Non-Violence**, 468 U.S. 288, 293 (1984) (upholding regulation of expressive conduct in part because it leaves open ample alternative methods of communicating the intended message). "While the First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places, a restriction on expressive activity may be invalid if the remaining modes of communication are inadequate." **Members of City Council of Los Angeles v. Taxpayers for Vincent**, 466 U.S. 789, 812 (1984).

"[R]esidential signs have long been an important and distinct medium of expression." **City of Ladue v. Gilleo**, 512 U.S. 43, 55, 54 (1994) (invalidating ordinance prohibiting homeowners from displaying any signs on their property except "residence identification" signs, "for sale" signs, and signs warning of safety hazards

because it "almost completely foreclosed a venerable means of communication that is both unique and important").

> Displaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means. . . . Residential signs are an unusually cheap and convenient form of communication . . . . [and] may have no practical substitute. A special respect for individual liberty in the home has long been part of our culture and our law; that principle has special resonance when the government seeks to constrain a person's ability to speak there.

*Id.* at 56–58. Due to the special significance of the right to speak from one's own home, severe restrictions of this right do not afford adequate alternatives. *See Arlington Cty. Republican Comm.*, 983 F.2d at 594–95 (invalidating two-sign limit and rejecting government argument that public speeches, door-to-door and public canvassing, distributing handbills, appearing at citizen group meetings, advertising, and posting signs in local businesses and automobiles, are viable alternatives to signs at private residences).

"The showing that a law punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep,' suffices to invalidate all enforcement of that law, 'until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.'" *Snider*, 752 F.3d at 1158, *quoting Broadrick*, 413 U.S. at 615, 613, *and citing Virginia v. Black*, 538 U.S. 343, 367 (2003). Courts "may impose a limiting construction on a statute only if it is readily susceptible to such a construction." *Stevens*, 559 U.S. at 481. Ordinance 983 is not readily susceptible to a limiting construction. This court "will not rewrite a law to conform it to constitutional requirements." *Id.* "Limiting constructions of state and

local legislation are more appropriately done by a state court or an enforcement agency." ***Ways v. City of Lincoln***, 274 F.3d 514, 519 (8th Cir. 2001).

Willson is likely to succeed on the merits of his First Amendment challenge. The preliminary injunction should be granted.

\* \* \* \* \* \* \*

The judgment is reversed, and the case remanded for further proceedings consistent with this opinion.

_____